UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


**JEFFREY C. ZILBA, et al.**,                    Case No. 3:11 CV 1845

           Plaintiff,                    Magistrate Judge James R. Knepp, II

     v.                    MEMORANDUM OPINION AND ORDER

**CITY OF PORT CLINTON, OHIO**,

           Defendant.

### INTRODUCTION

This case began when named Plaintiff Jeffrey C. Zilba parked on the street in Port Clinton,

Ohio in what he believed to be a legal parking spot. Plaintiff received a parking ticket and now

challenges Defendant Port Clinton's parking ordinance, claiming it violates his due process rights

under the United States and Ohio Constitutions and also claiming the ordinance violates Ohio law.

The case is before the Court on competing motions for summary judgment. (Docs. 27, 31).

After filing a Second Amended Complaint (Doc. 23), Plaintiff filed a Motion for Class Certification

(Doc. 26). Defendant filed a Motion for Summary Judgment. (Doc. 27). Defendant also requested

an extension of 21 days following the Court's decision on the Summary Judgment Motion to

respond to Plaintiff's Class-Certification Motion (Doc. 28), which the Court granted (Non-document

entry dated July 25, 2012). Plaintiff filed an Opposition to Defendant's Motion and a Cross-Motion

for Summary Judgment. (Doc. 31). Defendant and Plaintiff each filed a Reply. (Docs. 33, 35). The

Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367, and the parties consented the

undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73.

(Doc. 9). The Court held oral arguments on December 19, 2012. (Non-document entry dated

December 19, 2012). Thereafter, Plaintiff and Defendant each filed Supplemental Briefs (Docs. 38, 39) and Plaintiff filed a Response to Defendant's Supplemental Brief (Doc. 41). For the reasons explained below, the Court denies Defendant's Motion for Summary Judgment and grants Plaintiff's Motion for Summary Judgment.

## BACKGROUND

The material facts in this case are not disputed. On July 28, 2011, Plaintiff parked his car on the street in the 300 block of Madison Avenue adjacent to the Ottawa County Court of Common Pleas in Port Clinton, Ohio, in what he believed to be a designated parking space. (Doc. 27-1, at 1; Doc. 31, at 2; Doc. 31-1). Though the area was not marked with any signs indicating parking is prohibited at that location (Doc. 31, at 2), the curb was painted yellow (Doc. 27-1, at 1). According to Port Clinton police officer James R. Cipiti, Plaintiff's car was parked within twenty feet of a pedestrian crosswalk at an intersection, and the yellow curb indicated parking was prohibited. (Doc. 27-2, at ¶¶ 2–4). Officer Cipiti issued Plaintiff a ticket pursuant to Port Clinton Ordinance § 351.03(n). (Doc. 27-2, at ¶ 4). The ordinance states:

> No person shall stand or park a vehicle, except when necessary to avoid conflict with other traffic or to comply with the provisions of this Traffic Code, or while obeying the directions of a police officer or a traffic control device . . . [a]t any place where signs prohibit stopping, standing or parking, or where the curbing or street is painted yellow . . . .

Port Clinton Codified Ordinance § 351.03(n), available at http://www.conwaygreene.com/PortClinton/lpext.dll?f=templates&fn=main-h.htm&2.0 (last visited January 31, 2013).

Plaintiff discovered the parking ticket on his windshield when he returned to his vehicle. (Doc. 27-1, at 2; Doc. 31, at 2). The citation stated Plaintiff violated § 351.03(n) and further

provided:

### Instructions for Paying Parking Fees

$20.00 parking fine payable within 14 days of the time of violation at the Police Department or by mail. $25.00 fine if paid after 14 days and within 30 days of the time of violation. Failure to pay such fine shall constitute a minor misdemeanor. If vehicle is towed or impounded an additional $25.00 fine is added to the fine schedule.

(Doc. 27-2, Ex. A). The envelope accompanying the ticket provided spaces for a return address and postage, stated the Port Clinton Police Department's address, and instructed the recipient not to mail cash. (Doc. 27-2, Ex. A). On August 18, 2011, Defendant received a $20.00 money order from Plaintiff as payment for the ticket, which it accepted as payment of the fine. (Doc. 27-1, at 2; Doc. 31, at 4–5).

### STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

3

**DISCUSSION**

Defendant claims Plaintiff lacks standing, further arguing its parking ordinances do not violate either the United States Constitution's Due Process Clause or Ohio law. (*See* Doc. 27-1, at 4–19). Plaintiff, not surprisingly, argues the opposite. (*See* Doc. 31). The Court addresses these arguments below, beginning with the question of Plaintiff's standing.

<u>Plaintiff Has Standing to Pursue His Claims</u>

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing is "an indispensable part of [a] plaintiff's case," and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof". *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). When a case is before the court on a motion for summary judgment and standing is at issue, the plaintiff must establish there exists no genuine issue of material fact as to justiciability; mere allegations of injury do not suffice. *Dep't of Commerce v. United States House of Representatives*, 525 U.S. 316, 329 (1999). Where, as here, a defendant challenges standing, the court presumes lack of jurisdiction "unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (internal quotations omitted). It is Plaintiff's burden to establish standing by showing "facts essential to show jurisdiction." *FW/PBS v. Dallas*, 493 U.S. 215, 231 (1990) (internal citations omitted).

Determining whether Plaintiff has standing requires the Court to consider constitutional limits on federal-court jurisdiction and prudential limits on its exercise. *Warth*, 422 U.S. at 498. Constitutional standing derives from Article III of the United States Constitution, which confines federal court jurisdiction to suits involving an actual case or controversy. *Allen v. Wright*, 468 U.S.

4

737, 750 (1984). Constitutional standing requires a plaintiff to demonstrate three elements: (1) "injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of" such that the injury is fairly traceable to the defendant's conduct; and (3) a likelihood – not mere speculation – that the injury "will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (internal citations omitted).

Prudential standing requirements are a judicially created set of principles limiting "the class of persons who may invoke the [federal] courts' decisional and remedial powers." *Warth*, 422 U.S. at 499. These limits require three additional conditions: (1) The plaintiff must assert his own rights, rather than those belonging to third parties; (2) the plaintiff's claim must not be a generalized grievance shared in substantially equal measure by all or a large class of citizens; and (3) the plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit. *Id. See also Allen*, 468 U.S. at 751; *Bennett v. Spear*, 520 U.S. 154, 162 (1997).

Before addressing the merits of Plaintiff's case, the Court must ensure he has standing to invoke its jurisdiction. Below, the Court addresses Defendant's two standing challenges and concludes Plaintiff does, in fact, have standing to challenge Defendant's parking ordinance.

*Paying the Fine Did Not Deprive Plaintiff of Standing*

Defendant claims Plaintiff has no standing because he waived his right to a hearing when he "chose" to pay the $20.00 fine associated with the parking ticket rather than "attempt[ing] to avail himself of the hearing and review" Defendant contends was available to him. (Doc. 27-1, at 10–11). However, all the cases Defendant cites and the Court has been able to find supporting this

5

proposition have facts distinguishable from those in this case.

In every case Defendant cites, the ticket at issue specifically stated ticket recipients could contest the ticket by requesting a hearing. In *Herrada v. Detroit*, 275 F.3d 553 (6th Cir. 2001), the parking citation listed the address to which payments should be mailed and informed the recipients they "ha[d] 30 days in which to (1) admit responsibility and pay the fine, (2) admit responsibility with an explanation of why he or she should not be obligated to pay the fine, or (3) deny responsibility and request a hearing." *Id.* at 555. In *Walter v. Chicago*, 1992 WL 88457 (N.D. Ill. 1992), the parking citation instructed recipients to "PAY THE APPLICABLE FINE (BY MAIL OR IN PERSON) OR CONTEST THIS PARKING VIOLATION NOTICE (BY MAIL OR IN PERSON)" and specified a number of grounds for contesting the ticket. *Id.* at *5 (emphasis in original).[1] And in *Wertz v. West Milgrove*, 2009 WL 1183155 (N.D. Ohio 2009), the speeding ticket at issue included an order to appear on a specific date or sign a guilty plea and "waiver of trial provision" and pay the total amount of the fine and costs. *Id.* at *4. Rather than appear, Wertz signed the waiver and paid all fines and costs. *Id.* at *1.

When the plaintiffs in those cases paid the fines or otherwise failed to avail themselves of available procedures, the courts found they lacked standing or otherwise waived the right to challenge the citations on due process grounds because they had voluntarily waived their rights to

---

1. The plaintiff in *Walter* was an attorney, like Plaintiff here. *Walter*, 1992 WL 88457 at *5. Walter did not believe the listed grounds for contesting the ticket included his defense – that he was not parked at the address listed on the ticket. *Id.* at *1, 5. Instead of paying the fine or requesting a hearing, Walter filed a complaint challenging the parking ordinance on due process grounds. *Id.* at *1. While implying "rather pointedly" that the face of the ticket potentially presented notice problems due to the "inartfully worded list of defenses," the court determined Walter lacked standing. *Id.* at *5. Specifically, the court emphasized any attorney would realize he could raise Walter's defense when faced with the "ticket's generous invitation" to pay *or contest* the ticket. *Id.* In the case before this Court, Defendant's ticket presented recipients with no such invitation.

6

hearings. *Herrada*, 275 F.3d at 558 ("Herrada lacks standing to argue that hearings are not held despite requests by vehicle owners, because she elected to pay the fine rather than request a hearing."); *Walter*, 1992 WL 88457 at *3 (Walter lacked standing because he could not "trace any deprivation or threatened deprivation of property to any of the adjudicative procedures (as outlined in both the ordinance and the enabling statute) that he questions because he never made use of them."); *Wertz*, 2009 WL 1183155 at *4 ("The Court agrees that Wertz waived any procedural due process claim [by signing a waiver and mailing his fines and costs]."). And rightly so. Due process entitles people to notice and an opportunity to be heard before they are deprived of their property. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). In the cases Defendant cites, the plaintiffs received notice, and a hearing was available. They read the tickets and knew how to pay the fines; the same tickets explicitly specified how to challenge the citations should they choose to do so; they chose to pay (or in Walter's case, to file a civil complaint challenging the ticket) rather than request hearings.

Plaintiff's circumstances differ dramatically. The parking ticket Defendant issued to Plaintiff did not explain how to contest the ticket and provided no notice of an opportunity to request a hearing. Indeed, it appears Defendant's parking ordinance enforcement scheme does not contemplate a hearing on the merits of an underlying parking citation. Defendant's parking ticket is actually much more analogous to the ticket at issue in *Williams v. Redflex Traffic Systems, Inc.*, 582 F.3d 617 (6th Cir. 2009). The plaintiff in *Williams* received a traffic ticket after a camera placed by an independent company videotaped her running a red light. *Id.* at 619. The citation Williams received offered three options: (1) pay a $50 fine by mail, in which case no record of the violation would be kept or sent to her insurance company; (2) complete an affidavit stating she was not driving her car

7

when it ran the red light and naming the person who was driving; or (3) request a hearing, with the caveat that "[t]o schedule a hearing you will be assessed a court processing fee of $67.50." *Id.*

Though the district court found Williams lacked standing, the Sixth Circuit reversed, finding Williams's situation different from cases in which plaintiffs simply failed to invoke available procedures. *Id.* at 619–20. The court held "a notice that offers the ticketed the choice between paying a $50 fine and having to pay $67.50 to challenge it offers no choice at all" because "few rational persons would pay their parking ticket if challenging it was conditioned on paying a non-refundable fee over and above the cost of the ticket." *Id.* at 621. The defendant in *Williams* "vigorously contend[ed] that no such 'processing fee' [wa]s in fact imposed for requesting a hearing." *Id.* at 619. But the court deemed this argument irrelevant. The processing fee was indisputably printed on the ticket the plaintiff received, and "plaintiffs cannot be required to be clairvoyant and may, justifiably, rely on what their notice in fact says." *Id.* at 619–21. The plaintiff's standing was therefore unaffected by her failure to pay at all, because the choice offered to her "remained an irrevocably bad bargain." *Id.* at 621.

The situation here is remarkably similar. By failing to notify ticket recipients they may contest the citation and declaring a person commits a minor misdemeanor by failing to pay within 30 days, Defendant removes the ability to make a meaningful choice. Defendant merely provided an envelope listing the Police Department address for payment of the fine. Thus, ticket recipients must either (1) pay the fine – in which case Defendant will claim they voluntarily waived their rights to challenge both the merits of the underlying citation *and* the parking ordinance itself – or (2) refuse to pay within 30 days and thus subject themselves to an additional, *criminal* charge. Despite Defendant's assertions that ticket recipients could contest the merits of their underlying parking

citations at the hearing on the minor misdemeanor, the face of the ticket contains no indication this is possible and as in *Williams*, it is reasonable to assume recipients will rely on what their notice does, or in this case, does not say. Plaintiff suffered an actual injury when he paid the fine rather than subject himself to an additional criminal charge, and paying the fine rather than choosing to commit a crime does not deprive Plaintiff of standing to challenge Defendant's parking ordinance.

*Whether Plaintiff Has Cognizable Legal Defenses*

Defendant also argues Plaintiff lacks standing because he cannot assert any cognizable legal defenses to the parking ticket. (Doc. 27-1, at 7–9). Relying heavily on *Rector v. City & Cnty. of Denver*, 348 F.3d 935 (10th Cir. 2003), Defendant states, "Plaintiff has no cognizable legal basis for challenging the parking ticket, because he was, in fact, illegally parked . . . and a 'No Parking' sign was not required to indicate[] parking was prohibited." (Doc. 27-1, at 8). Plaintiff responds, "[Defendant] believes that as long as they maintain through these proceedings (which of course is the absolute wrong forum and venue) that Plaintiff had no defense to the ticket, they need not afford him any due process." (Doc. 31, at 6). Plaintiff continues, asserting that "among other possible defenses", he sought to challenge the ticket on the grounds that the No Parking Zone was inadequately marked and/or that the citation was facially defective. (Doc. 31, at 6–7). Despite Defendant's reliance on *Rector*, Plaintiff's case is distinguishable in critical ways.

Terri Rector parked at a metered spot in downtown Denver shortly after 5:00 p.m. *Rector*, 348 F.3d at 939. She did not place any coins in the meter, check to see whether the meter was in force, or determine if any time remained on the meter. *Id.* She was issued a parking ticket and paid the fine two days later. *Id.* Rector did not assert any legal basis for challenging the ticket, stating only she "didn't feel like [she] was able to dispute the ticket, even though [she] had some concerns

about it" and noting she was only suspicious of the ticket because "she was in a restaurant in view of the street at the time the ticket was given, and did not see anyone in the area giving parking tickets." *Id.* at 945 (internal quotations omitted). In her deposition, Rector acknowledged she had been parked illegally and that her concerns "were not in the nature of a challenge to the ticket." *Id.* The court determined Rector lacked standing because she did not challenge the substantial truth of the ticket and it was "undisputed" she asserted no legal basis for challenging the ticket. Thus, the court found any deficiencies in notice caused her no injury because there was nothing for a hearing to decide. *Id.* at 945 (citing *Codd v. Velger*, 429 U.S. 624, 627 (1977)). Further, the parking ticket at issue explicitly informed recipients they could dispute the ticket. *Rector*, 348 F.3d at 938.

Plaintiff's circumstances differ enough from those in *Rector* that the Court finds them distinguishable. Namely, the parties here *do* dispute whether Plaintiff has asserted legal bases for challenging his ticket or would have, given the opportunity to do so in an appropriate forum. Throughout his filings in this case, Plaintiff has maintained he intended to challenge the ticket on a number of grounds, including but not limited to arguing the ticket was facially defective or the No Parking Zone was inadequately marked. (Doc. 23, at ¶¶ 32–36; Doc. 31, at 6–7; Doc. 35, at 3–4). Defendant asserts there is no possible defense – that because Plaintiff parked there, he is liable for the civil fine, and if he had not paid the civil fine, he would be guilty of a minor misdemeanor. But Plaintiff has strenuously adhered to his theory that he at least may defend against the parking ticket

10

because it is either facially invalid, the No Parking Zone was inadequately marked, or both.[2] In fact, since his First Amended Complaint he has continuously alleged the ordinance is facially invalid because it violates Ohio law. (Doc. 12, at ¶¶ 41–61; Doc. 23, at ¶¶ 32–36; Doc. 31, at 6–7; Doc. 35, at 3–4; Doc. 38, at 7–9). Even ignoring the affidavit Plaintiff filed after oral arguments (Doc. 36, at 3–4), the Court finds Plaintiff's consistent challenges to the ordinance's facial validity due to what he asserts is a violation of Ohio law sufficiently show he claims a defense to the parking ticket.

Plaintiff received the parking ticket at issue on July 28, 2011. (Doc. 27-2, at ¶ 2, Ex. A). Defendant received Plaintiff's $20.00 payment on August 18, 2011. (Doc. 27-1, at 2). But Plaintiff filed his initial complaint alleging the ticket violated due process in the Ottawa County Court of Common Pleas on August 12, 2011 – six days prior to Defendant receiving payment. (Doc. 1-1, at 2). Defendant's parking ticket provided no information about how to request a hearing, so it appears Plaintiff was beginning the process of challenging the ticket's validity the only way he could without subjecting himself to a criminal charge. As Plaintiff points out, this federal Court is a wholly inappropriate forum for determining whether he was parked illegally in Port Clinton, Ohio; that issue

---

2. Defendant contends Plaintiff agrees he was parked illegally (Doc. 33, at 3 n.1), but this is not true. Defendant states, "[I]n footnote 1 of his memorandum, Plaintiff acknowledges he was guilty of a parking violation." (Doc. 33, at 3 n.1). In relevant part, that portion of Plaintiff's brief states:

> Defendant argues that Plaintiff has no standing . . . because he is conclusively in violation of the parking ordinance. He is guilty because Defendant is not required to erect a sign notifying drivers that the parking space at issue is both within 20 feet of a crosswalk and the curb is painted yellow and it is common knowledge that a yellow curb means no parking. In contrast, Defendant argues . . . .

(Doc. 31, at 7 n.1). The Court does not interpret this as Plaintiff admitting his guilt in a footnote when all his other statements adamantly argue he has defenses. Rather, the Court believes Plaintiff was merely expounding on his perception of Defendant's "no cognizable legal defenses" standing argument. Perhaps Plaintiff could have prefaced his sentence with "Defendant believes Plaintiff is guilty because . . . .", but the Court does not read his phrasing as an admission of guilt.

would have been appropriately determined at a hearing on the merits of the parking citation. (*See* Doc. 31, at 6; Doc. 35, at 4). In *Rector*, deposition testimony showed the plaintiff admitted she had been parked illegally, but Plaintiff here continues to maintain he has legal defenses to the ticket and would have presented them at a hearing, had one been available to him. Though Defendant attempts to convince the Court Plaintiff admitted he was parked illegally, this simply is not the case. The Court finds Plaintiff has asserted legal defenses to the ticket. Defendant obviously disputes this, but that very dispute is the reason the Court cannot find Plaintiff lacks standing based on the logic of *Rector*, where it was *undisputed* the plaintiff had no legal defenses. Because the Court finds Plaintiff has standing to challenge Defendant's parking ordinance, it next examines the merits of Plaintiff's due process and Ohio law claims.

Count I – Procedural Due Process

Defendant contends Plaintiff's due process claims must be dismissed for two reasons. First, Defendant argues there was no deprivation of property. Second, Defendant argues all process due Plaintiff was available to him. (Doc. 27-1, at 12). As a preliminary matter, the Court finds Defendant is immune from liability for Plaintiff's claims made under the Ohio constitution, but this immunity does not extend to § 1983 claims or claims arising from alleged violations of the United States Constitution. *Stefan v. Olson*, 2012 WL 3799211, *11 n.12 (6th Cir. 2012) (citing Ohio Revised Code Chapter 2744; *Patton v. Wood Cnty. Humane Soc.*, 798 N.E.2d 676, 681 (Ohio Ct. App. 2003); *McCallister v. Portsmouth*, 673 N.E.2d 195, 197 (Ohio Ct. App. 1996)).

*An Actionable Deprivation of Property Occurred*

Defendant argues Plaintiff's due process claim must fail because no actionable deprivation of his property occurred. (Doc. 27-1, at 12–13). To state a claim for denial of due process, a plaintiff

12

must first establish he has been deprived of a property or liberty interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). No doubt, Plaintiff has a property interest in his money. *Herrada*, 275 F.3d at 556; *Silvernail v. Cnty. of Kent*, 2003 WL 1869206, *3 (W.D. Mich. 2003), *aff'd* 385 F.3d 601 (6th Cir. 2004), *rehearing en banc denied*. According to Defendant's theory, Plaintiff was not deprived of property because he "voluntarily paid the fine specified on the ticket." (Doc. 27-1, at 12). This argument fails for the same reason Defendant's standing argument fails. Plaintiff did not pay the fine voluntarily. By providing no notice of an available hearing – either through the ticket language or the language of the parking ordinance itself – and by establishing failure to pay the fine within the specified time frame as a minor misdemeanor, Defendant removed Plaintiff's ability to make a meaningful choice about whether to pay the ticket.

Had Plaintiff refused to pay, he would have been subjected to an additional, criminal charge. Defendant repeatedly stated it is "legally powerless to collect" parking fines absent pursuing the misdemeanor charge. (Doc. 27-1, at 3, 9, 12; Doc. 31, at 5). Thus, it seems likely Plaintiff *would* have been charged with a crime had he not paid the fine. This dilemma – pay the fine (thereby waiving your right to challenge the ticket or ordinance) or commit a crime – does not truly allow any choice. *See Williams*, 582 F.3d at 619–21.

In a divided panel, the Sixth Circuit affirmed the Western District of Michigan in *Silvernail*, 385 F.3d at 601, *aff'g* 2003 WL 1869206, and spoke to the issue of voluntary payment and deprivation of property. *Silvernail* involved not parking tickets, but demand notices sent to people after their checks were dishonored. *Silvernail*, 385 F.3d at 603–04. Dishonored checks were forwarded to a private company, Check Enforcement Unit, Inc. (CEU), which, pursuant to contracts with Michigan municipalities, sent a series of letters to the check writer on municipal law

enforcement letterhead. *Silvernail*, 2003 WL 1869206 at *1. The initial "Due Process Notice" demanded separate payments for (1) the amount of the dishonored check plus bank fees, payable to the merchant, and (2) a $25.00 Government Assessment Fee payable to the county. *Id.* The notice stated:

> This letter notifies you that the following check(s) have been returned from your financial institution as insufficient funds or account closed, which is a violation of law. Stop Payment and other forms of returned checks may be a violation of law. *Call the CEU* to determine if a stop payment was validly issued – if so, the Assessment fee will be waived.
>
> Violations of the check laws are administered for the Police/Sheriff Department by the Check Enforcement Unit, Inc. Repayment of the check(s) plus the bank fee and government assessment fee is required. Should you have any questions regarding this letter or the amount, *please feel free to call*:
>
> 616-682-6000, Monday-Friday 12:00 P.M. to 5:00 P.M.

*Id.* at **1–2 (emphasis added). The notice's reverse side further warned recipients a local law governed the passing of bad checks and required recipients to pay the full amount of the check, plus fees, within five business days of receiving the notice. *Id.* at *2. Additionally, the reverse side invited recipients to "[p]lease contact the Law Enforcement Processing Center" if their checks had been stolen or their funds had been removed due to garnishment or other lawful court order. *Id.* Finally, the reverse side warned recipients a warrant could be issued for their arrest if they did not pay. *Id.* The plaintiffs paid the $25.00 Government Assessment Fee and filed a complaint alleging the notices violated the Due Process Clause. *Id.* at *2.

The district court dismissed the plaintiffs' complaint, finding they could not show any deprivation of property had occurred.[3] *Id.* at *3. Despite the notices failing to state a hearing was

---

3. Discussed *infra*, the district court and Sixth Circuit also found the *Silvernail* notices satisfied due process requirements even if a deprivation had occurred.

14

available or informing the plaintiffs of a procedure for obtaining a hearing, the *Silvernail* district court concluded the plaintiffs failed to allege a due process claim because they voluntarily paid the $25.00 Government Assessment Fee. *Id.* at \*4. Citing *Herrada*, the district court noted the Sixth Circuit "recognize[s] that an individual's voluntary surrender of property to the government precludes a due process claim because, in such cases, there has been no governmental interference with the individual's property interest." *Id.* at \*4. The court noted both plaintiffs admitted they voluntarily paid the fee in their complaint. *Id.* Further, the court found due process was satisfied, emphasizing the plaintiffs had notice of a returned check and a phone number to call if they had questions or if their checks had been stolen. *Id.* at \*6.

Like the *Silvernail* notices, Defendant's parking tickets fail to mention a hearing is available or advise ticket recipients of a procedure for requesting a hearing, but mention future criminal actions against the recipients. (*See* Doc. 27-2, Ex. A). However, the *Silvernail* notices provided a telephone number and address, along with numerous invitations to contact CEU or the Law Enforcement Processing Center for additional information. *Silvernail*, 2003 WL 1869206 at \*1–2.[4] *See also Walter*, 1992 WL 88457 at \*5 ("Any attorney would understand that whatever the ticket said, he nonetheless had a right to raise a defense that he was not parked where the ticket said he was . . . [by] accept[ing] the ticket's generous invitations" to pay the fine or contest the notice.).

The *Silvernail* district court focused on the fact that the notices provided a phone number for people to call if they had any reason they should not be required to pay the Government Assessment

---

4. The notices stated: "Call the CEU to determine if a stop payment was validly issued – if so, the Assessment fee will be waived."; "Should you have any questions regarding this letter or the amount due, please feel free to call . . . ."; "Please contact the Law Enforcement Processing Center if your checks have been stolen . . . ." *Id.*

Fee. 2003 WL 1869206 at *6. But Defendant's parking ticket listed no phone number; it listed no reasons the fee might be waived or otherwise inapplicable; and it included no invitation to contact the Police Department, in stark contrast to the multiple invitations for recipients to contact CEU in *Silvernail*. On appeal, the Sixth Circuit did not determine whether the *Silvernail* district court erred in finding no deprivation occurred, holding instead the process was constitutionally sufficient even if it assumed a deprivation of property. *Silvernail*, 385 F.3d at 604. The Court finds that here – where the parking ticket language contained no phone number and no indication further information could be obtained in any way, but merely provided an envelope listing the Police Department address for payment of the fine – Plaintiff was deprived of property when he paid the fine rather than subject himself to a criminal charge.

Defendant also contends Plaintiff is not subject to an additional penalty as he alleges because it claims he would face the same penalty (a maximum $25.00 fine) if he chose not to pay the ticket and was later found guilty at his misdemeanor trial. (Doc. 27-1, at 12–13). But this really is not true. Paying a civil fine and being found guilty of an additional criminal charge – even a minor misdemeanor – are not equivalent. When he was given a parking ticket and paid it to avoid subjecting himself to a criminal charge, Plaintiff was deprived of his property. Because the Sixth Circuit has not spoken on whether a deprivation occurred in *Silvernail*, and because Defendant's tickets include far less information than the notices in *Silvernail*, the Court finds an actionable deprivation occurred.

*Defendant Failed to Provide Constitutionally Sufficient Process*

Plaintiff has established he was deprived of a property interest. To succeed on his due process claim, he must additionally establish he was deprived of procedural due process, which

16

requires notice of the alleged violation and an opportunity to be heard. *See Loudermill*, 470 U.S. at 542 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). The notice must be reasonably calculated under the circumstances to (1) apprise a person of the pendency of the action and (2) afford him an opportunity to present his objections. *Mullane*, 339 U.S. at 314.

"[D]ue process is flexible" and the procedural protections it requires vary according to what the particular situation demands. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *see also Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The fundamental requirement of due process is "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (internal citations omitted). *Mathews* provided a three-factor framework for determining what procedural due process protections are due claimants subjected to a governmental deprivation: (1) the private interests affected by the government action; (2) the risk of erroneous deprivation; and (3) the government's interest, including the fiscal and administrative costs of additional processes. *Id.* at 335. In *Mathews*, the Supreme Court also held a post-deprivation hearing can be meaningful so long as it takes place prior to final disposition. *Id.* at 334.

In the present case, Defendant argues Plaintiff's property interest at stake is minimal, amounting to at most a $25.00 civil fine. (*See* Doc. 27-1, at 14); *see also, e.g., Silvernail*, 385 F.3d at 605. The Court agrees that were a maximum $25.00 civil fine the only interest at stake, it would be a small interest. However, there is more to consider here. It may be true Plaintiff would never have been imprisoned as a result of refusing to pay his parking ticket, but the threat of criminal prosecution for a minor misdemeanor if he did not pay adds more to the equation. When ticket recipients do not pay parking fines to Defendant within 30 days, that failure to pay is a minor misdemeanor. The criminal charge is separate from the initial parking violation because Defendant

17

has made parking violations civil offenses that are not prosecuted criminally. (*See* Doc. 27-1, at 14). This extra component – requiring ticket recipients to undergo criminal prosecution if they wish to have a hearing on their civil offense – is troublesome and makes the individual interests at stake greater than a mere $25.00 civil fine.

Defendant contends the risk of erroneous deprivation "was slight at most." (Doc. 27-1, at 14). To support this contention, Defendant says, "The ticket was issued by a police officer. A hearing was available. An address on the ticket showed where inquir[y] could be made." (Doc. 27-1, at 14). Finally, Defendant claims its interest in the current ticketing program is great because it "allows recipients of parking tickets to waive the expense of a minor misdemeanor trial" and Defendant "has a strong interest in effectively dissuading people from violating parking laws" designed to ensure public safety. (Doc. 27-1, at 14).

Defendant cites the Seventh Circuit case *Horn v. Chicago*, 860 F.2d 700 (7th Cir. 1988) to support the theory that its parking tickets satisfy due process requirements. (Doc. 27-1, at 14–15). There, the Northern District of Illinois held the challenged demand notices violated plaintiffs' due process rights "by failing to give sufficient notice that a hearing was available to contest their liability for the amount demanded." *Horn*, 860 F.2d at 701. The Seventh Circuit reversed, finding constitutionally sufficient notice. *Id.*

The facts in *Horn* were as follows. When a person received an initial parking violation citation in Chicago, the ticket recipient could "plead guilty to the parking ordinance violation and pay the scheduled fine by mail" *or* "appear in court to contest the ticket on the date set forth on the ticket." *Id.* (internal citations omitted). When fines remained unpaid and recipients had not appeared, Chicago contracted with a private company to send subsequent demand notices to the plaintiffs. *Id.*

18

These demand notices notified recipients "the parking tickets listed . . . ha[d] not been paid", instructed them to pay the total amount shown immediately, and informed them Chicago would take further legal action against them if they did not pay, stating "TO PREVENT FURTHER ACTION YOU MUST RESPOND WITHIN 15 DAYS." *Id.* (emphasis in original). The demand notices also informed them they could "obtain additional information" by writing to the listed address or calling the listed phone number. *Id.* Additionally, the notices demanded $20.00 for each unpaid ticket regardless of the amount listed on the initial tickets. *Id.* at 702. If people did not respond to these first demand notices, they were sent a second – and then potentially a third – notice demanding $35.00 and then $50.00 for each unpaid ticket. *Id.*

The plaintiffs in *Horn* alleged these demand notices violated their due process rights "by misrepresenting that [they] owed fines, penalties, and court costs when no judgment had ever been entered against them". *Id.* The district court found the demand notices violated plaintiffs' due process rights by "demanding money . . . in excess of the amounts stated on the tickets, without adequate notice of the hearing to which they were entitled." *Id.* at 703. Reversing, the Seventh Circuit noted the flexibility of due process. *Id.* at 704. The court found the plaintiffs chose to pay the amounts demanded as fines for illegal conduct. *Id.* at 704. Specifically, the court stated:

> All [plaintiffs] had received the parking ticket-complaint setting one court date, and a 'white card' giving notice of a second court date. The first demand notice informed them that if they did not pay the amount demanded the city would 'take further legal action' . . . [and] [r]evised notices . . . indicat[ed] the 'maximum fine allowed' for each infraction . . . .

*Id.* at 704–05. The court also stated each notice listed a telephone number and address where recipients could obtain further information. *Id.* at 705. Ultimately, the court determined these notices satisfied due process requirements "[i]n light of the particular circumstances of this case, including

plaintiffs' *repeated refusals* to appear or pay". *Id.* (emphasis added).

Defendant briefly cited *DePiero v. City of Macedonia*, 180 F.3d 770 (6th Cir. 1999), *cert. denied*, 528 U.S. 1105 (2000). (Doc. 27-1, at 15). *DePiero* is one of the only Sixth Circuit cases addressing parking ticket due process claims, and the Court has examined its due process holding closely. In *DePiero*, the plaintiff was issued a parking ticket for violating a parking ordinance. 180 F.3d at 774 (6th Cir. 1999). The City of Macedonia had not decriminalized parking violations, so violations in that city remained criminal infractions. When Ohio municipalities have not decriminalized parking violations, the citations notifying offenders of the infraction must contain certain information, including an order for the offender to appear at a stated time and place. Revised Code § 2935.26(B)(4). Additionally, the ticket must include notice that the offender is required to do one of the following, and may be arrested if he fails to do so: (1) appear at the time and place stated in the citation; (2) appear in person at the clerk of court's office, sign a guilty plea and waiver of trial provision, and pay the total fine and costs; or (3) sign the guilty plea and waiver of trial provision on the citation, and mail the citation with a check or money order for the total amount of the fine and costs to the clerk of court's office. Revised Code §§ 2935.26(C)(1)–(2).

The ticket in *DePiero* contained none of the information required by statute. *Id.* at 787. Though "the citation itself did not specify where, when, or how the plaintiff might contest the complaint, a hearing on the citation was docketed in Macedonia Mayor's Court". *Id.* When the plaintiff failed to pay the ticket or appear in court, a summons was mailed to his home ordering him to appear in court and warning, "If you fail to appear at the time and place stated above, you may be arrested." *Id.* The plaintiff contended he never received this notice. *Id.* He failed to pay the fine and failed to appear. *Id.* at 775. The Mayor issued a bench warrant for his arrest and brought

20

criminal contempt charges against him. *Id.* The plaintiff was ultimately arrested, tried, and found guilty of a misdemeanor parking violation and the criminal contempt charge, but on appeal the Cuyahoga Falls Municipal Court dismissed both charges. *Id.* Among other challenges, the plaintiff claimed the parking ticket violated his right to procedural due process because it did not inform him how to contest the complaint. *Id.*

The Sixth Circuit determined that even though the initial citation did not include information about how to contest the ticket as required by statute, constitutional due process notice requirements were satisfied because the initial notice that charges were pending against the plaintiff – the parking ticket – was supplemented by a mailed notice that included information "as to where and when he might contest the charges." *Id.* at 787–88. The court further held the mailed notice was enough, despite not being sent by certified mail. *Id.* at 788. According to the court, "[f]ailure of the citation to comply with state law does not . . . automatically translate into a deprivation of procedural due process under the United States Constitution." *Id.* at 788. Though the plaintiff had not received notice on the ticket itself, the court held due process requirements had been satisfied because he received notice on the summons mailed to him ordering him to appear in court and indicating he would not be threatened with arrest unless he failed to appear. *Id.*

In another Sixth Circuit procedural due process case, the *Silvernail* district court – affirmed by a divided panel of the Sixth Circuit – held it did not matter that the notices failed to advise recipients of the availability of a hearing or the procedure for requesting one. *Silvernail*, 2003 WL 1869206 at *6, *aff'd* 385 F.3d at 604–05. Indeed, the court found "the lack of such information or even a formal hearing does not render the notices constitutionally deficient." *Silvernail*, 2003 WL 1869206 at *6. The Sixth Circuit agreed with the district court's analysis: At $25.00, the individual

21

property interest was minimal; the risk of erroneous deprivation was slight because the plaintiffs had notice of the returned check and were provided a phone number to call if there was any reason they should not be required to pay, and because if the plaintiffs had not paid, the defendant could not have deprived them of their property absent filing a criminal complaint; and the government interest in resolving bad checks outside the criminal system, thereby reducing administrative costs and avoiding unnecessary criminal or civil proceedings, was significant. *Silvernail*, 385 F.3d at 605, *aff'g* 2003 WL 1869206 at *6. The Sixth Circuit found "[r]equiring the County to implement additional procedures, such as a full hearing for each bad check passed in the county, would impose significant costs and administrative burdens without any accompanying benefit." *Silvernail*, 385 F.3d at 605. Finally, the Sixth Circuit concluded that "[i]n any event, had plaintiffs failed to pay the assessment fee, they would have been entitled to the full panoply of due process protections when and if the County instituted a criminal action to collect the fee." *Id.*

Defendant's notice differs from the notices at issue in *Horn*, *DePiero*, and even *Silvernail* such that in Plaintiff's case, there is a heightened risk of erroneous deprivation. In *Horn*, the plaintiffs received multiple prior court dates notifying them of a hearing on the parking tickets prior to receiving demands for payment, and the plaintiffs failed to appear at those hearings. Defendant's tickets, on the other hand, provide no dates or indications a hearing is available. In *DePiero*, the court held the plaintiff *did* receive notice to appear at a court date, based on the court's finding that mailing the notice to him was enough. Arguably, based on the court's reasoning that the subsequent mailing notified DePiero of a hearing and satisfied due process requirements, the result would have been different if the plaintiff had never been mailed a subsequent summons. This is the difference between DePiero's case and Plaintiff's. The court determined DePiero eventually received notice

22

a hearing was available; Plaintiff never received any such notice.

Plaintiff's case even differs from *Silvernail*. The district court found, and the divided Sixth Circuit panel agreed, there was no indication additional procedural safeguards would reduce the risk of erroneous deprivation. *Silvernail*, 385 F.3d at 605. The Sixth Circuit emphasized the recipients had notice of the returned checks "and were provided with a telephone number to call if their checks were stolen . . . or if there was *any other reason* why they should not be required to pay the Government Assessment Fee." *Id.* (emphasis added). The plaintiffs did not attempt to call the number provided or allege erroneous fee-assessments "were not correctable by the procedures provided – a telephone call to CEU." *Id.* Instead, they merely paid the fines. *Id.* The lengthy dissent argued no previous Sixth Circuit case law could be read to indicate providing a phone number alone was sufficient to satisfy due process, *Silvernail*, 385 F.3d at 608 (Cole, Circuit Judge, dissenting), but this Court believes the *Silvernail* notices went further than merely providing a phone number; in fact, the *Silvernail* notices provided a phone number, plus multiple invitations to call with questions, plus indications of reasons the fines may not apply. Defendant's notice merely included an envelope addressed to the Police Department and an instruction to pay the fine or else be subject to an additional criminal charge. The Court declines to extend *Silvernail*'s phone number logic to a pre-addressed envelope coupled with a demand for payment and threat of criminal prosecution on an additional charge.

The *Silvernail* court also determined due process had not been violated because plaintiffs "would have been entitled to the full panoply of due process protections when and if the county instituted a criminal action to collect the fee." *Silvernail*, 385 F.3d at 605. Like the defendant in *Silvernail*, Defendant claims it was powerless to collect unpaid parking ticket fees absent instituting

23

the minor misdemeanor charge. (Doc. 27-1, at 3, 9, 12; Doc. 31, at 5). However, unlike the circumstances in *Silvernail*, the underlying parking offense in Plaintiff's case was a civil offense, not a criminal one. The bad-check ordinances in *Silvernail* made it unlawful to intentionally write checks drawn on accounts with insufficient funds. *Silvernail*, 2003 WL 1869206 at *1. The district court found criminal prosecution was a real possibility because the Michigan statutes upon which the ordinances were based prescribed penalties ranging from 93 days imprisonment to up to two years in prison for intentionally writing bad checks. *Id.* at *5 n.2. By contrast, Plaintiff would not have been criminally prosecuted for the underlying parking violation; he would only have been prosecuted for failure to pay the demanded fine. The issues to be determined at a trial under the *Silvernail* facts would have been different than the issues at a trial for failure-to-pay under Defendant's parking enforcement scheme. Under the *Silvernail* facts, the issue would have been whether the notice-recipient had knowingly passed a bad check – the same issue that would have been determined at a hearing challenging the facts alleged in the notice. Under Defendant's enforcement scheme, however, the issue would be whether a ticket recipient failed to pay the ticket within 30 days – *not* whether he committed the underlying parking offense.

The Court finds that under these circumstances, the only semblance of process Defendant provides is the right to refuse to pay – intentionally committing a minor misdemeanor when the initial offense was not criminal – and later defend oneself against an additional charge at a criminal trial. Defendant provided no phone number, no indication the ticket could be challenged, and no indication a recipient could request further information. A pre-addressed envelope demanding payment and telling people they willfully commit a crime by not paying does not satisfy due process. Defendant's parking tickets and enforcement scheme therefore violate the United States

24

Constitution.

<u>Count II – Ohio Law: Home Rule Authority and Revised Code Chapter 4521</u>

In the Supplemental Brief it filed after oral arguments, Defendant suggested Plaintiff's "claim for declaratory relief must be dismissed" because Plaintiff challenged an ordinance's constitutionality and failed to serve the Ohio Attorney General with a copy of the complaint as required by Revised Code § 2721.12(A). (Doc. 39, at 2). Defendant cited two Ohio cases to support its argument that Plaintiff's failure to serve the Ohio Attorney General precludes this Court from rendering relief. *Cicco v. Stockmaster*, 89 Ohio St.3d 95, 99 (2000)*; Sebastani v. City of Youngstown*, 60 Ohio St.3d 166, 167 (1979). However, when the Northern District of Ohio has faced similar challenges, it has determined § 2721.12 has "no effect on this court's jurisdiction or procedures, and failure to have served or joined the Ohio Attorney General likewise has no effect on this court's jurisdiction." *Bell v. Marinko*, 235 F. Supp. 2d 772, 780 (N.D. Ohio 2002); *Brothers v. Cnty. of Summit*, 2007 WL 1567662, *32 n.19 (N.D. Ohio 2007); *see also Kammeyer v. City of Sharonville*, 311 F. Supp. 2d 653, 662 (S.D. Ohio 2003) ("*Cicco* involves a procedural requirement in the Ohio Court system that is not binding upon this Court, and would only foster unjust delay for the Plaintiffs"). Plaintiff's failure to serve the Ohio Attorney General with a copy of the complaint thus does not affect this Court's jurisdiction.

Defendant admits it has decriminalized parking violations. (Doc. 27-1, at 14) (stating "[t]he fine was a civil, not a criminal penalty" and admitting it is not a misdemeanor like other traffic violations because "another penalty" is provided). Plaintiff contends that because Defendant decriminalized parking violations, it was required to follow the notice and procedural requirements specified in § 4521.03(B). (Doc. 35, at 8). Defendant's ticket did not include any of this information,

and Plaintiff argues this violates Ohio law. (Doc. 35, at 8). Defendant, meanwhile, argues it was not required to follow the requirements set forth in § 4521.03(B) because it claims to have decriminalized parking violations not pursuant to § 4521.02(A), but pursuant to the home rule powers granted to it by the Ohio constitution. (Doc. 27-1, at 16). To determine whether Plaintiff or Defendant is correct, the Court has carefully examined Ohio's statutory scheme governing parking, Defendant's parking ordinances, and case law relating to Defendant's home-rule argument. The Court concludes Defendant was required to comply with Revised Code § 4521.03(B) and violated Ohio law by not doing so.

*Ohio's Statutory Scheme Governing Parking*

In § 4511.68, the Ohio Revised Code establishes a number of statewide parking prohibitions. Among these, no person may "park a . . . vehicle, except where necessary to avoid conflict with other traffic or to comply with [other Revised Code sections], or while obeying the directions of a police officer or a traffic control device . . . [w]ithin twenty feet of a crosswalk at an intersection . . . ." Revised Code § 4511.68(A)(6). Further, "[e]xcept as otherwise provided in this division, whoever violates this section is guilty of a minor misdemeanor." Revised Code § 4511.68(B); *see also* Revised Code § 4511.99. Thus, Ohio's default rule makes it a criminal offense to park in a prohibited spot. Under § 4511.06, the statewide parking prohibitions and statutes making violations minor misdemeanors "shall be applicable and uniform throughout [Ohio] and in all political and municipal corporations of [Ohio]." Revised Code § 4511.06. No local authority may enact or enforce any rule in conflict with these statutes, but this does not prevent authorities from "exercising the rights granted them by Chapter 4521 of the Revised Code and does not limit the effect or application of . . . that chapter." *Id.*

26

Further, these statewide parking statutes "do not prevent local authorities from . . . regulating the stopping, standing, or parking of vehicles" under their jurisdiction and within the reasonable exercise of their police power. Revised Code § 4511.07(A)(1). Stated more plainly, the state statutory scheme regulating parking does not hinder municipalities' rights to simultaneously regulate parking. Section 4511.07(C) sets some limitations on municipalities, however, requiring every ordinance enacted under § 4511.07(A)(1) to be enforced in compliance with § 4511.071, *unless* the local authority also enacted an ordinance pursuant to § 4521.02(A) and specified "that a violation of [the ordinance] shall not be considered a criminal offense, *in which case the ordinance . . . shall be enforced in compliance with Chapter 4521* of the Revised Code." Revised Code § 4511.07(C) (emphasis added). Thus, where a municipality has enacted an ordinance regulating parking and violations of that ordinance remain a minor misdemeanor, the ordinance must comply with § 4511.071.[5]

Local authorities have another option for regulating parking. A local authority that has enacted any ordinance regulating parking pursuant to § 4511.07 may also enact an ordinance specifying that a violation of the parking ordinance "shall not be considered a criminal offense for any purpose, that a person who commits the violation shall not be arrested . . . and that the violation shall be handled pursuant to this chapter". Revised Code § 4521.02(A). That is, rather than keeping parking violations criminal offenses as they are under § 4511.68(B), § 4521.02(A) permits municipalities to elect to decriminalize these violations and make them civil offenses.

When a local authority does choose to enact an ordinance decriminalizing parking violations

---

5. Section 4511.071(A) provides that the owner of a vehicle "shall be entitled to establish nonliability for prosecution of an ordinance [regulating parking]" by proving they were not in control of the vehicle at the time of the violation.

27

under § 4521.02(A), it must adopt a parking ticket for law enforcement officers to use. Revised Code § 4521.03(A). The "Ohio Uniform Traffic Ticket" described in the Ohio Traffic Rules "*may* be used as the parking ticket". *Id.* (emphasis added). Regardless of whether a local authority uses the Uniform Traffic Ticket, any ticket it adopts must contain provisions advising the ticket recipient of a number of things. The parking ticket must (1) advise the recipient he "must answer in relation to the parking infraction . . . and that certain penalties may result from a failure to timely answer"; (2) "indicate the allowable answers that may be made and [indicate] that the person will be afforded a hearing if he denies in his answer that he committed the parking infraction"; (3) "specify the entity to which, the time within which, and the allowable manners in which the answer must be made"; (4) "indicate the penalties that may result from failure to timely answer and the fine that arises from the parking infraction"; (5) "warn that failure to timely answer or to appear at a requested hearing will be considered an admission of the parking infraction"; and (6) "warn that a default civil judgment potentially may be entered against the person and, if different, the owner of the vehicle if the person fails to timely answer or to appear at a requested hearing." Revised Code § 4521.03(B).

*Defendant's Parking Ordinances*

Part Three of Defendant's Codified Ordinances contains the Port Clinton Traffic Code. *See* http://www.conwaygreene.com/PortClinton/lpext.dll?f=templates&fn=main-h.htm&2.0 (last visited January 31, 2013). Section 351.03 establishes numerous prohibitions on parking, including the two Defendant claims Plaintiff violated on July 28, 2011 – parking within twenty feet of a crosswalk at an intersection, and parking at any place where the curb is painted yellow. Port Clinton Codified Ordinances §§ 351.03(f), (n), available at

28

http://www.conwaygreene.com/PortClinton/lpext.dll?f=templates&fn=main-h.htm&2.0 (last visited

January 31, 2013). In § 351.13, Defendant establishes what it requires to be listed on its parking

tickets:

> Each police officer shall attach to each vehicle found to be in violation of the
> provisions of this chapter a notice to the owner or operator thereof that such vehicle
> has been parked in violation of the provisions of this chapter and instructing such
> owner or operator to pay a parking fine of twenty dollars ($20.00) within fourteen
> days of the time of violation specified in the notice and a fine of twenty-five dollars
> ($25.00) if paid after the elapse of such fourteen day period and within thirty days
> of the time of violation. Such fines shall be paid at the City Police Department. The
> failure to post such a fine as provided in this subsection (d) hereof shall constitute
> a minor misdemeanor.

*Id.* at § 351.13(d). Section 303.99 establishes Defendant's "General Traffic Code Penalties",

providing that anyone who "violates any provision of th[e] Traffic Code *for which no penalty is*

*otherwise provided*, is guilty of a minor misdemeanor". Port Clinton Codified Ordinances §

3 0 3 . 9 9 ( a ) ,     a v a i l a b l e     a t

http://www.conwaygreene.com/PortClinton/lpext.dll?f=templates&fn=main-h.htm&2.0 (last visited

January 31, 2013) (emphasis added). Because § 351.13(d) establishes a separate penalty for violating

the parking prohibitions – payment of a fine – such violations are civil, not criminal, offenses. (*See*

*also* Doc. 27-1, at 14). Defendant has also provided that failure to pay the fine – that is, violating

§ 351.13(d) – is a minor misdemeanor.

The parking ticket issued to Plaintiff on July 28, 2011 tracked the language of § 351.13(d).

It stated Plaintiff violated § 351.03(n) by parking at a yellow curb, instructed Plaintiff to pay $20.00

to the Police Department within fourteen days of the violation date or $25.00 after fourteen but

within 30 days of the violation date, notified him failure to pay "shall constitute a minor

misdemeanor", warned him an additional fine would be assessed if the vehicle was towed or

impounded, included an envelope for payment pre-addressed to the Police Department, and instructed him not to mail cash. (Doc. 27-2, Ex. A). Defendant's ordinances do not require the parking ticket to contain any information about an available hearing. The one and only mention of a hearing in Defendant's entire Traffic Code states:

> In any hearing on a charge of illegally parking a motor vehicle, testimony that a vehicle bearing a certain license plate was found unlawfully parked . . . and further testimony that the record of the Ohio Registrar of Motor Vehicles shows that the license plate was issued to the defendant, shall be prima-facie evidence that the vehicle which was unlawfully parked, was so parked by the defendant.

Port Clinton Codified Ordinances § 351.02, available at http://www.conwaygreene.com/PortClinton/lpext.dll?f=templates&fn=main-h.htm&2.0 (last visited January 31, 2013). It is entirely unclear, however, how anyone was supposed to find out about this hearing, as the parking tickets were not required to, and did not, notify recipients of its availability.

Despite decriminalizing parking violations by making the penalty a civil fine rather than a misdemeanor, Defendant did not use the Ohio Uniform Ticket *or* otherwise include all the information listed in § 4521.03(B). Namely, Defendant's citation did not (1) indicate the allowable answers or indicate Plaintiff would be afforded a hearing if he denied committing the parking infraction in his answer; (2) specify the allowable manners in which an answer could be made; (3) warn that failure to timely answer or appear at a requested hearing would be considered an admission of the infraction; or (4) warn that a default civil judgment potentially could be entered against Plaintiff if he failed to timely answer or appear at a requested hearing. (*See* Doc. 27-2, Ex. A). Defendant contends it was not required to include the information listed in § 4521.03(B) because it decriminalized parking violations pursuant to its home rule powers, not pursuant to § 4521.02(A), arguing the § 4521.03(B) requirements are only triggered if a municipality decriminalizes pursuant

30

to the state statute.

*Home Rule Powers Analysis*

The Ohio Constitution provides that "[m]unicipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police . . . regulations as are not in conflict with general laws." Ohio Const. Art. XVIII, Sec. 3. Known as a municipality's home rule authority, this means municipalities may adopt ordinances under their police powers, "and derive no authority from, and are subject to no limitations of, the General Assembly, except that such ordinances shall not be in conflict with general laws." *Geauga Cnty. Bd. of Comm'rs v. Munn Rd. Sand & Gravel*, 67 Ohio St.3d 579, 582 (1993) (quoting *Struthers v. Sokol*, 108 Ohio St. 263 (1923)). For a municipality to regulate pursuant to its police powers, "[n]o specific grant of authority from the General Assembly is necessary." *Geauga*, 67 Ohio St.3d at 583. The language of § 4511.07 reflects this: Ohio's statute criminalizing parking prohibitions "does not prevent" municipalities from also regulating parking via their home rule powers. The Ohio Supreme Court has said the words "do not prevent" in § 4511.07 mean the statute "is not an express authorization to regulate traffic", but rather "takes a home rule approach", affirming a municipality's authority to regulate traffic when its ordinances do not conflict with general laws. *Id.* at 581–83.

In *Marich v. Bob Bennett Constr. Co.*, 116 Ohio St.3d 553 (2008), the Ohio Supreme Court explained the three-part test used to determine when a local ordinance conflicts with a general law such that it is invalid. "A state statute takes precedence over a local ordinance when (1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of the police power, rather than of local self-government, and (3) the statute is a general law." *Id.* (quoting *Canton v. State*, 95 Ohio St.3d 149, ¶ 9 (2002)).

31

A municipality's police power allows it "to enact regulations only to protect the public health, safety, or morals, or the general welfare of the public." *Id.* at ¶ 11 (citing *Downing v. Cook*, 69 Ohio St.2d 149, 150 (1982)). By contrast, the power of local self-government relates "solely to the government and administration of the internal affairs of the municipality." *Marich*, 116 Ohio St.3d at ¶ 11 (quoting *Beachwood v. Cuyahoga Cnty. Bd. of Elections*, 167 Ohio St. 369 (1958)). Though the Ohio Constitution protects local self-government ordinances, "police-power ordinances must yield in the face of a general state law." *Marich*, 116 Ohio St.3d at ¶ 11 (citing *Am. Financial Servs. Ass'n v. Cleveland*, 112 Ohio St.3d 170, ¶ 23 (2006)). According to the Ohio Supreme Court, "the regulation of traffic is an exercise of police power that relates to public health and safety as well as the general welfare of the public." *Id.* at ¶ 14. This includes regulating parking. *See id.* (internal citations omitted). Because traffic ordinances are an exercise of police power, they "may be invalidated if [they] conflict[] with the general laws of this state." *Id.* at ¶ 15.

Next, the Ohio Supreme Court explained the process for determining whether state statutes are "general laws" such that local ordinances may not conflict with them. *Id.* at ¶ 16. "To constitute a general law for purposes of home-rule analysis, a statute must (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally." *Id.* (quoting *Canton*, 95 Ohio St.3d at paragraph 1 of the syllabus).

Under the first prong, a statute need not be devoid of all exceptions to remain statewide and comprehensive in effect because permitting exceptions allows the legislature to tailor laws to

account for a wide range of situations. *Id.* at ¶ 20. The second requirement for a general law – that the statute must apply to all parts of the state and operate uniformly throughout it – is satisfied if a statutory framework applies to all parts of the state without exception and the basic process set out is a uniform one. *Id.* at ¶ 24.

The statutes at issue in Plaintiff's case include § 4511.07 (affirming municipalities retain authority to regulate parking, consistent with the home rule amendment), § 4511.68 (listing parking prohibitions and making violations minor misdemeanors), and §§ 4521.02–.03 (allowing municipalities to decriminalize parking violations and providing procedural and notice requirements). Revised Code § 4511.06 specifically provides that, among other sections, §§ 4511.68(A)–(B) "shall be applicable and uniform throughout this state . . . [and] [n]o local authority shall enact or enforce any rule in conflict" with these statutes. That is, despite Defendant's unsupported assertion (Doc. 39, at 5), they are general laws and local ordinances cannot conflict with them even when enacted pursuant to home rule authority. Section 4511.06 provides an exception, though, noting municipalities may still "exercise the rights granted them by Chapter 4521" – that is, they may choose to decriminalize parking violations despite the statewide default statutory scheme making parking violations criminal offenses.

As Defendant stated, § 4521.02 is permissive rather than mandatory. But § 4511.68 is comprehensive and statewide – those prohibited parking spaces are prohibited everywhere in Ohio, and violations are minor misdemeanors unless municipalities have decriminalized them as permitted by § 4521.02(A). This exception granting municipalities the right to decriminalize parking violations does not disqualify the other parking statutes from being general laws. Ultimately, §§ 4511.68(A)–(B) represent a statewide and comprehensive legislative enactment, apply to all parts

33

of the Ohio and operate uniformly, set forth a police regulation, and prescribe parking rules for citizens throughout the entire state. They are therefore general laws to which § 4521.02(A) provides an exception. Pursuant to their home rule authority and reiterated by § 4511.07, municipalities may enact their own parking regulations so long as these ordinances do not conflict with general laws. However, these remain criminal violations unless and until the municipalities exercise the rights granted to them by § 4521.02(A) and decriminalize the violations. When they do decriminalize parking violations, case law and statutory interpretation suggest municipalities must enact their ordinances so they align with the requirements established in § 4521.03(B).

Defendant cited *Ohio v. Short*, 172 Ohio App. 3d 83 (Ohio Ct. App. 2007) to support its argument that a municipality can develop its own parking ordinance and the ordinance is not required "to mirror the provisions of Chapter 4521." (Doc. 33, at 7). But the city in *Short* had not decriminalized parking violations. *Short*, 172 Ohio App. 3d at ¶¶ 2, 14. There, the court held § 4521.02(A) is permissive, not mandatory, such that "[a] local authority may choose to remove parking violations from its criminal process, but it is not required to do so." *Id.* at ¶ 14. As such, "the requirements of R.C. 4521.03 have application only to a local authority that has elected to use the authority granted by R.C. 4521.02 to decriminalize parking violations." *Id.* at ¶ 2. Moreover, the court implied § 4521.03(B) applies to preserve due process rights when cities decriminalize parking violations, holding "the procedural requirements set forth in R.C. 4521.03 for local authorities that have used R.C. 4521.02(A) to make parking violations noncriminal are in lieu of the procedural requirements and safeguards available to any criminal defendant." *Id.* at ¶ 16.

In *Ohio v. Sullivan*, 1999 WL 11265 (Ohio Ct. App. 1999), the plaintiff appealed from a municipal court judgment finding her guilty of violating a parking ordinance. Sullivan argued §

34

4511.06 – which makes Ohio's parking statutes applicable and uniform throughout the state and prevents local authorities from enacting ordinances in conflict with them – required local parking ordinances to be identical to the comparable state statutes. *Id.* at *2. The court disagreed, noting § 4511.06 "does not prevent local authorities from exercising the rights granted them by Chapter 4521". *Id.* The court then said Chapter 4521 "authorizes 'enact[ment of] any ordinance, resolution, or regulation that regulates the standing or parking of vehicles and that is authorized pursuant to section . . . 4511.07 of the Revised Code".[6] *Id.* The court also mentioned § 4511.07 authorizes local authorities to regulate parking, and went on to cite municipal home rule authority. *Id.* at *2–3. According to the court, while § 4521.02(A) could be viewed as granting authority to enact parking ordinances, "a better view is that the statute is an express articulation of circumstances under which local parking ordinances are not in conflict with state law." *Id.* at *3.

The court determined the contested parking ordinances did not conflict with state law because the city enacted its ordinances "consistent with the guidelines of R.C. Chapter 4521." *Id.* Sullivan had argued the city's parking offenses remained criminal. *Id.* One of the city's ordinances provided violations of general traffic were criminal offenses, ranging from minor to first-degree misdemeanors, but precluded criminal liability when an offense provided for a different penalty. *Id.* at *4. The court noted § 4521.02(A) allows municipalities to specify parking violations will not be criminal offenses and instead will be handled pursuant to Chapter 4521. *Id.* at *3. Further, the court found the city adopted its parking ordinances pursuant to § 4521.02(A) because it made violations

---

6. Though the court eventually adequately explained the way § 4521.02(A) functions, it is unclear why it referred to § 4521.02(A) as the statute that appears to grant authority to enact parking ordinances, as § 4511.07 is the statute that "does not prevent" local authorities from enacting their own parking regulations. Section 4521.02(A) is more specific: It allows cities to decriminalize parking violations even though state law makes parking violations criminal offenses.

35

noncriminal offenses. *Id.* at *3–4. Because the city adopted other penalties for parking offenses, they were noncriminal, and the court found this consistent with § 4521.02(A). *Id.* And because parking offenses were noncriminal, the Revised Code section addressing criminal liability did not apply in Sullivan's case: "Instead, R.C. 4521.08 govern[ed] the hearing to which Sullivan was entitled when she denied that she committed the parking violation." *Id.* Without citing any language in the ordinance expressly stating the city decriminalized parking violations "pursuant to" § 4521.02(A), the court held the city *had* decriminalized pursuant to § 4521.02(A). *See id.* at *3–4. The court also held the other sections of Chapter 4521 applied in these circumstances, including the section describing the type of hearing to which Sullivan was entitled.

Applying that court's logic to Plaintiff's case, Defendant decriminalized parking violations by establishing a penalty other than Ohio's statutory default minor misdemeanor charge or Defendant's default misdemeanor charge for general traffic offenses. Because it decriminalized parking violations, the other sections of Chapter 4521 apply, including § 4521.03(B)'s required information for parking tickets. Ohio's statutory structure supports this reading, particularly in § 4511.07(C). That section requires municipal parking ordinances to be enforced in compliance with § 4511.071, dealing with defenses to criminal prosecution, *unless* the municipality decriminalized parking violations pursuant to § 4521.02(A), "*in which case the ordinance . . . shall be enforced in compliance with Chapter 4521.*" Revised Code § 4511.07(C) (emphasis added).

Defendant states § 4521.02(A) "does not authorize a municipality to decriminalize parking tickets," (Doc. 27-1, at 16), but courts have stated exactly that and consistently concluded the other parts of Chapter 4521 apply when parking violations have been decriminalized. *Gardner v. Columbus*, 841 F.2d 1272, 1274 (6th Cir. 1988); *Short*, 172 Ohio App. 3d at ¶2; *Cleveland v. Ballou*,

36

1992 WL 110240, *1 (Ohio Ct. App. 1992). In *Gardner*, the Sixth Circuit considered whether the notice system Columbus used for parking violations satisfied due process requirements. Prior to Chapter 4521's enactment, Columbus enforced its parking regulations via criminal penalties, charging violators with minor misdemeanors. *Gardner*, 841 F.2d at 1274. The Sixth Circuit explained § 4521.02(A) "authorized municipalities and local authorities to enact ordinances . . . which treat violations of such ordinances in a non-criminal manner", further explaining if a municipality has enacted such an ordinance, Chapter 4521 "provides a framework" for enforcing the regulations. *Id.*

In Columbus, the parking tickets stated the infraction, vehicle make and license number, and the date, time, and location of the infraction. *Id.* If the owner or operator failed to pay the specified fine or otherwise answer within ten days, the city assessed a two dollar penalty. *Id.* About six weeks later, a notification would be mailed to the owner or operator's last known address. *Id.* This notification stated the following: "The records . . . indicate that you have failed to respond to the parking ticket infraction . . . . You must pay the total due, or deny the parking fraction: explain the circumstances of the parking infraction: and/or request a hearing in writing. If you fail to answer or to appear at a hearing within 30 days a default judgment may be entered against you". *Id.* at 1275. At any time, a ticketed vehicle's owner or operator could file an answer admitting an infraction with or without explanation, or denying the infraction and requesting a hearing. *Id.* If someone denied committing a parking infraction, a hearing was conducted. *Id.*

The plaintiffs in *Gardner* argued Columbus's parking ordinances were penal in nature, but the Sixth Circuit agreed with the district court, finding it "abundantly clear" the penalties were intended to be civil. *Id.* at 1276–77. The court noted the Columbus City Code explicitly stated a

parking infraction "shall not be considered a criminal offense for any purpose." *Id.* at 1277 (internal citations omitted). The plaintiffs argued notices mailed through ordinary mail violated due process, but the court held regular mail was sufficient. *Id.* at 1279. Reaching its decision, the court reiterated the district court's reasoning that (1) no final administrative determination was made until three notices had been sent by regular mail; (2) no further action was taken if notices were undeliverable because the owner had moved; and (3) if steps were taken to collect any judgment, the owner could move to set aside the judgment if no notice was given. *Id.* Thus, the court concluded the notice itself and the actual application of the notice provisions were reasonably calculated to apprise parking violators of an action's pendency and satisfied due process requirements. *Id.*

In *Ballou*, an Ohio court of appeals determined whether the City of Cleveland violated Chapter 4521 when its parking ticket did not strictly comply with § 4521.03(B). Ballou argued the parking tickets issued to him did not comply with the notice requirements established in § 4521.03(B), but the court held the parking citations *did* comply with those requirements. *Ballou*, 1992 WL 110240 at *1. After noting § 4521.02(A) "authorized the 'local authority' to decriminalize parking citations", the court also noted Cleveland had established a Parking Violations Bureau pursuant to Chapter 4521. *Id.* Ballou argued the city's parking citations "did not clearly comport with the R.C. 4521.03(B) requirements" because they did not state the violator would be afforded a hearing if he denied committing the parking infraction. *Id.* at *2. However, the parking tickets issued to Ballou stated, "You must, within 15 days, answer this infraction by admitting the parking infraction, admitting the parking infraction with an explanation of the circumstances, or denying the parking infraction and requesting a hearing." *Id.* The court held that because the language "specifically provide[d] for the denial of a parking infraction and a request for a hearing" and Ballou

38

never requested a hearing, instead choosing to ignore the tickets by failing to respond in any way, Ballou had not been prejudiced by Cleveland's "failure to use the exact language contained in R.C. 4521.03(B)." *Id.* The court never held § 4521.03(B) did not apply in these circumstances; rather, it held the § 4521.03(B) requirements were satisfied even though the ticket did not use the exact statutory language because the ticket still notified Ballou he could deny the parking infraction and request a hearing. Defendant's ticket, on the other hand, did *not* "specifically provide[] for the denial of a parking infraction and a request for a hearing." *See id.*; (Doc. 27-2, Ex. A).

Defendant's home rule argument does not acknowledge that absent § 4521.02(A), *any* municipal ordinance purporting to decriminalize parking infractions would directly conflict with the Ohio statutes making parking infractions criminal offenses. Section 4511.07 and a municipality's home rule authority establish that cities can have their own ordinances regulating parking, but these violations are still criminal offenses. Section 4521.02(A) goes a step further, essentially telling municipalities that even though state law makes parking violations criminal offenses, they *may* (i.e., the state is granting them permission to) decriminalize these offenses without conflicting with general laws. But if municipalities do this, they must follow the rules established in § 4521.03(B). Stated otherwise, § 4521.02(A) grants them the authority to decriminalize something the state makes criminal, so long as they enforce violations in compliance with the rest of Chapter 4521.

Defendant admits it has decriminalized parking violations. (Doc. 27-1, at 14). Because this would directly conflict with state law absent § 4521.02(A) authorizing municipalities to do so, Defendant is bound by the rest of Chapter 4521. *Ballou* and *Gardner* establish Defendant did not need to use the exact statutory language set out in § 4521.03(B)'s requirements for parking tickets, but it needed to include *something* indicating allowable answers, indicating a hearing would be

39

available if Plaintiff wished to contest the ticket, and somehow notifying Plaintiff of the information § 4521.03(B) requires. Defendant's parking ticket does none of this. Therefore, by not complying with Chapter 4521, Defendant's ordinance violates Ohio law.

### Conclusion

Because there is no genuine issue of material fact and Plaintiff is entitled to judgment as a matter of law, the Court grants Plaintiff's Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

   s/James R. Knepp II   
United States Magistrate Judge
